264 P.3d 40

**STATE of Hawaiʻi, Plaintiff–Appellee,**

v.

**Curtis Ray BROOKS, Defendant–Appellant.**

No. 29605.

Intermediate Court of Appeals of Hawaiʻi.

Oct. 21, 2011.

As Corrected Dec. 2, 2011.

William H. Jameson, Jr., On the briefs, for Defendant–Appellant.

Brian R. Vincent, Deputy Prosecuting Attorney, City and County of Honolulu, On the briefs, for Plaintiff–Appellee.

NAKAMURA, Chief Judge, and FOLEY and LEONARD, JJ.

Opinion of the Court by NAKAMURA, C.J.

Defendant–Appellant Curtis Ray Brooks (Brooks) and Sistine Rangamar (Rangamar) were charged with the murder, kidnapping, and robbery of Ted Arifuku (Arifuku). Rangamar gave a statement to the police shortly after his arrest. In his statement, Rangamar admitted that he had assaulted, restrained, and robbed Arifuku, but also asserted that his actions had been pursuant to a plan devised by Brooks and implicated Brooks in Arifuku's murder. Rangamar committed suicide before trial.

Brooks filed a pre-trial motion in limine, seeking authorization to introduce at trial selected portions of Rangamar's statement that incriminated Rangamar. Brooks sought to introduce these self-incriminating portions of Rangamar's statement to bolster his claim that Rangamar was solely responsible for the offenses committed against Arifuku.

Plaintiff–Appellee State of Hawaiʻi (State) argued that if Brooks was allowed to introduce the self-incriminating portions of Rangamar's statement, then the State should be allowed to introduce other portions of the

statement that incriminated Brooks, pursuant to the "rule of completeness" set forth in Hawai'i Rules of Evidence (HRE) Rule 106 (1993).[1] Brooks countered that the self-incriminating portions of Rangamar's statement were admissible as statements against penal interest, pursuant to HRE Rule 804(b)(3) (1993),[2] but that the admission of the portions of Rangamar's statement that incriminated Brooks would violate Brooks's constitutional right of confrontation under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The Circuit Court of the First Circuit (Circuit Court)[3] determined that the self-incriminating portions of Rangamar's statement that Brooks sought to introduce, when taken in isolation, were "likely to mislead the jury and to distort the content and context of Rangamar's entire statement." The Circuit Court also concluded that *"Crawford* does not bar the introduction of evidence required under HRE Rule 106." The Circuit Court ruled:

> Once [Brooks] makes the tactical decision to introduce the selected portions of Rangamar's statement to the police, he will waive or forfeit any claim that the introduction by the State of the portions of the statement necessary to prevent the jury from being misled pursuant to HRE Rule 106 violates the Confrontation Clause.

At trial, Brooks introduced selected self-incriminating portions of Rangamar's statement, and the State was permitted to introduce other portions of Rangamar's statement under HRE Rule 106. The jury found Brooks guilty of the lesser included offense of manslaughter and guilty as charged of kidnapping and robbery.

As his sole issue on appeal, Brooks argues that the Circuit Court erred in ruling that by introducing selected portions of Rangamar's statement, Brooks waived or forfeited any claim that the State's introduction of the portions of the statement necessary to prevent the jury from being misled pursuant to HRE Rule 106 violates the Confrontation Clause. We affirm the Circuit Court's decision.

## BACKGROUND

### I.

On January 15, 2007, an apartment manager opened the door to Arifuku's apartment and found Arifuku lying face down on the floor with his hands tied behind his back. Arifuku was dead. Arifuku had bruises and cuts on his face and bruises on his scalp, neck, chest, back, arms, and legs. Based on Arifuku's autopsy, Gayle Suzuki, M.D., Deputy Medical Examiner for the City and County of Honolulu, determined the cause of death to be "asphyxia due to neck compression, due to manual strangulation."

Honolulu Police Department (HPD) Detective James Anderson (Detective Anderson) was assigned to investigate Arifuku's death. In Arifuku's apartment, the police recovered a homemade utility knife, consisting of an "X–Acto" blade wrapped in a cigarette package, next to Arifuku's body; a blue cap that was on the bed; $2,002 from a wallet in pants hanging inside a closet on the door; and various quantities of what appeared to be

---

1. HRE Rule 106 provides:
   When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

2. HRE Rule 804(b)(3) provides:
   (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
   . . . .
   (3) Statement against interest. A statement which was at the time of its making so far

contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]

3. The Honorable Richard W. Pollack presided.

methamphetamine and marijuana located in drawers.

On January 16, 2007, the day after Arifuku's body was discovered, Detective Anderson learned that an FBI agent had received information about the case from Patty Estabilio (Estabilio), Brooks's aunt by marriage. After being apprised of this information, Detective Anderson began looking for Brooks. Detective Anderson spoke to Estabilio over the phone on January 16, 2007, and he later held in-person interviews with Estabilio and her roommate, Amy Katten (Katten), at their apartment. Katten identified a cap that Detective Anderson showed her at the police station as belonging to Brooks. Both Estabilio and Katten testified at Brooks's trial.

According to Estabilio, she encountered Brooks by chance in 2006 and learned that she was his aunt. Brooks would frequently visit her apartment, and they developed a relationship of trust and were able to confide in each other. Prior to January 13, 2007, Brooks told Estabilio on several occasions that he wanted to rob Arifuku because Brooks thought Arifuku had a load of "ice" (crystal methamphetamine) and money. At the time Brooks made these statements, Estabilio did not believe that Brooks was serious, but when she heard that Arifuku had been killed, she immediately thought that Brooks had done it. Estabilio talked to Katten who called an FBI agent they both knew. A short time after Estabilio learned about Arifuku's death, Brooks told Estabilio that Brooks "did something that he couldn't fix."

According to Katten, she met Brooks and found out he was related to Estabilio. After Katten and Estabilio learned that Arifuku had died, Brooks, while alone with Katten, told her that "I did something that I cannot undo."

In January 2007, Brooks was homeless and living out of a van parked on Mahi'ai Street just off of Date Street. Estabilio provided Detective Anderson with the location of the van. On January 24, 2007, Brooks was found in his van and was arrested. The van was secured and towed to the main police station.

Brooks provided Detective Anderson with Rangamar's name, and Detective Anderson began looking for Rangamar as an additional suspect in the case.

On February 5, 2007, the police located Rangamar and his girlfriend, Naliki Christopher (Christopher), and arrested Rangamar. On that day and again on the following day, Detective Anderson interviewed Christopher. Christopher also testified at trial.

According to Christopher, she had been in a long-term relationship with Rangamar. Christopher and Rangamar met Brooks in January 2007 through Brooks's girlfriend, "Honey Girl," who was Christopher's friend. At that time, all four of them were using ice, and Christopher and Rangamar were living in a tent at Ala Wai Park, which was not far from where Brooks's van was parked. Rangamar's birthday was January 13th. Prior to January 13, 2007, Christopher heard Brooks discuss with Rangamar a plan to rob Arifuku. Brooks knew Arifuku and said that Arifuku was a drug dealer who sold ice and was disabled. Brooks drew a floor plan of Arifuku's apartment in Brooks's sketchbook, which was introduced at trial. Under Brooks's plan, Rangamar was to knock Arifuku out, then signal Brooks that it was okay for Brooks to come in by turning on the light in front. Brooks said he was a "good friend" of Arifuku and therefore knew where things were in Arifuku's apartment.

Christopher testified that on January 13, 2007, Brooks came to the tent in the morning, wished Rangamar "Happy Birthday," and left with Rangamar. Brooks later returned to the tent without Rangamar. Christopher went to get something to eat and Brooks tagged along. When they came back, they found Rangamar lying in the tent. Rangamar was bleeding from cuts on his "right lap," wrist, and ankle, and he was upset with Brooks. Rangamar asked Brooks why he had not come into Arifuku's apartment when Rangamar turned on the light and opened the door. Brooks asked Rangamar, "where's the money," "where was the drugs," and if Arifuku was dead or not.[4]

---

4. Christopher stated that Brooks used the Hawaiian word "make," which means "[t]o die, perish;

... dead, killed...." Mary K. Pukui & Samuel H. Elbert, Hawaiian Dictionary 228 (1986).

Rangamar explained that he went into Arifuku's apartment and tried to knock Arifuku out, but they got into a struggle, during which Arifuku got a hold of a knife and stabbed Rangamar. Brooks had earlier placed the knife in Rangamar's pocket. Eventually, Rangamar was able to incapacitate Arifuku and tie him up.

Christopher saw Rangamar give Brooks $300 to $400, which was roughly half of the amount of money that Rangamar said he had taken from Arifuku. Rangamar did not have any drugs to split with Brooks. Rangamar later confided to Christopher that he had obtained more money from Arifuku than Rangamar had disclosed to Brooks. Brooks indicated that he thought there were drugs and more money in Arifuku's apartment. Brooks left the tent and came back with Honey Girl, and they all smoked ice. Brooks and Honey Girl then left the tent. When they returned, they had a lot more ice. Brooks stated that he had gone by Arifuku's apartment "to go check and see" and that he "went go choke 'em one more time." When Brooks said that, his girlfriend, Honey Girl, pinched him and said, "why you got to say it like that for?".

## II.

On February 7, 2007, Rangamar waived his *Miranda* rights and made a recorded statement to Detective Anderson. Rangamar's recorded statement included the following information.

Rangamar reported that Brooks had first discussed a plan to rob Arifuku before January 13, 2007. At that time, Brooks drew a layout of Arifuku's apartment in an "art book." However, Rangamar turned Brooks down because Rangamar still had money and Christopher told Rangamar not to participate.

On January 13, 2007, which was Rangamar's birthday, Brooks came by Rangamar's tent. They went to Brooks's van, where Brooks gave Rangamar ice to smoke, so they could "get rev up about [Brooks's] plan." Rangamar had run out of money and decided to participate in the plan. Brooks told Rangamar that Arifuku sold ice and "weed," so

Rangamar should knock on Arifuku's door and say that "Mark" sent Rangamar to "pick up a twenty dollar." Brooks would be waiting at the back of the apartment for Rangamar to get into the apartment, "knock [Arifuku] up," and let Brooks in from the back door. Brooks instructed Rangamar that once Arifuku is "knocked out," to "tie him up" so that Arifuku could not move and Brooks could come into the apartment without being seen. Brooks wanted Rangamar to do this because Arifuku knew Brooks and could identify Brooks. Brooks told Rangamar that Arifuku was old and crippled and that it would be easy for Rangamar to "knock [Arifuku] out." Brooks gave Rangamar a homemade knife to use to threaten Arifuku and some cloth to tie up Arifuku. Rangamar also put on a cap that was in Brooks's van that belonged to Brooks.

In accordance with Brooks's plan, in the morning on January 13, 2007, Rangamar went to Arifuku's apartment and knocked on the door. When Arifuku opened the door, Rangamar stepped in, asked if he could buy a "twenty," and said that "Mark" had sent him. Arifuku apparently became suspicious and tried to usher Rangamar out of the apartment. Rangamar hit Arifuku in the face and a struggle ensued. During the struggle, Arifuku obtained possession of the knife Brooks had given Rangamar and cut Rangamar. They ended up on the floor, and Rangamar was able to use his heels to kick Arifuku until Arifuku became incapacitated and released the knife. Rangamar turned Arifuku over on his stomach and tied his hands behind his back. Arifuku was bleeding from the mouth, but Rangamar could still hear him breathing. Rangamar himself collapsed and lost consciousness. When Rangamar came to, he knocked on the back door to signal Brooks to come in, but Brooks did not enter. Rangamar took about $2,600 from Arifuku's back pocket and Arifuku's keys. When Rangamar left the apartment, Arifuku was still breathing, and while outside, Rangamar thought he heard Arifuku say "help."

Rangamar looked for Brooks and eventually went back to Rangamar's tent. Brooks showed up at the tent with Christopher, and Brooks asked Rangamar, "[D]id you get any-

thing?" Rangamar was mad at Brooks for leaving him "hanging" at Arifuku's apartment. Rangamar told Brooks that he had only taken $600 from Arifuku's apartment, and Rangamar split that amount with Brooks. Brooks wanted to go back to Arifuku's apartment. Honey Girl came to the tent, and Brooks and Honey Girl left the tent and came back on two occasions that evening.

Rangamar later learned that Arifuku had been killed by manual strangulation. Rangamar denied strangling Arifuku. Arifuku was still breathing when Rangamar left Arifuku's apartment. Rangamar thought that Brooks had gone back and choked Arifuku.

### III.

Brooks and Rangamar were jointly charged by complaint with second degree murder (Count 1); kidnapping (Count 2); and first degree robbery (Count 3). Prior to trial, Rangamar committed suicide, leaving Brooks as the sole defendant.

### A.

Brooks filed a motion in limine, seeking a pre-trial ruling from the Circuit Court allowing him to introduce selected portions of Rangamar's recorded statement to Detective Anderson as statements against Rangamar's penal interest, pursuant to HRE Rule 804(b)(3). The portions of Rangamar's recorded statement that Brooks sought to introduce included portions in which Rangamar recounted his actions in assaulting, tying up, and robbing Arifuku; stated that he had brought Brooks's cap and a homemade knife to Arifuku's apartment that had been left behind; detailed his conduct after leaving Arifuku's apartment; told Brooks and Christopher at the tent that Rangamar did not know if he had just knocked Arifuku out or might have killed Arifuku; and claimed that he heard Brooks say that Brooks went back to Arifuku's apartment and choked Arifuku, but later acknowledged that Christopher told

him that Brooks had made this statement, and Rangamar told Christopher he did not remember Brooks saying it.

### B.

The Circuit Court heard argument and orally ruled on Brooks's motion in limine before trial. The Circuit Court subsequently filed a written order setting forth in detail its decision and analysis.[5]

### 1.

The Circuit Court began its analysis by noting:

> In *Crawford v. Washington,* the United States Supreme Court held that the Confrontation Clause of the Federal Constitution bars the admission of out-of-court "testimonial" statements except where the declarant is unavailable and the defendant had the prior opportunity to cross-examine the declarant on the statement. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *accord State v. Fields,* 115 Hawai'i 503, 513, 168 P.3d 955, 965 (2007). The Supreme Court declined to comprehensively define the term "testimonial", but held that, at a minimum, the term included . . . statements made during police interrogations. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

The Circuit Court framed the parties' arguments as follows:

1. Brooks seeks to introduce selected portions of an out-of-court statement made by Rangamar, who is deceased, to Detective Anderson when Rangamar was under arrest for the murder of Arifuku. Brooks asserts that the selected portions of Rangamar's statement that Brooks seeks to introduce are admissible as statements against Rangamar's penal interest that are corroborated by other evidence.

2. The State argues that if Brooks is permitted to introduce portions of Ranga-

---

5. We note that the transcript of the hearing held by the Circuit Court on Brooks's motion in limine on November 29, 2007, is not included in the record on appeal. As the appellant, Brooks is responsible for ensuring that the record is complete. *See* Hawai'i Rules of Appellate Proce-

dure Rule 10 (2009) and Rule 11(a) (2006 & 2010). However, in light of the Circuit Court's detailed order setting forth its decision on the motion in limine, we are able to evaluate the Circuit Court's decision based on the existing record.

mar's statement, then it should be allowed to introduce other portions of the same statement necessary to explain or clarify the portions proffered by Brooks. The State relies upon the rule of completeness set forth in HRE Rule 106. The Commentary to HRE 106 provides that the rule is based on considerations which include "the misleading impression created by taking matters out of context." Statements introduced under HRE Rule 106 need not otherwise be admissible. *Monlux v. General Motors,* 68 Haw. 358, 367, 714 P.2d 930, 936 (1986).

3. Brooks argues that because Rangamar cannot be cross-examined on his statement to Detective Anderson, *Crawford* precludes the State from introducing the portions of the statement that would otherwise be admissible under HRE 106. "In other words, [Brooks] argues that he should be able to introduce the self-incriminating portions of Rangamar's statement as statements against penal interest while, at the same time, using *Crawford* to prevent the State from introducing other portions of the statement that may incriminate [Brooks]."

### 2.

The Circuit Court asserted that although neither the Hawai'i Supreme Court nor the United States Supreme Court had addressed the argument advanced by Brooks, courts from other jurisdictions have "held that the rule of completeness need not yield to *Crawford* when a defendant voluntarily introduces portions of an out-of-court testimonial statement." The Circuit Court cited and explained the rationale of the following cases that have reached this holding: *Arizona v. Prasertphong,* 210 Ariz. 496, 114 P.3d 828 (2005); *People v. Parrish,* 152 Cal.App.4th 263, 60 Cal.Rptr.3d 868 (2007); *United States v. Moussaoui,* 382 F.3d 453 (4th Cir.2004); and *State v. Selalla,* 744 N.W.2d 802 (S.D. 2008).

The Circuit Court agreed with the reasoning and the rationale advanced in these cases, and it concluded as follows:

The Court concludes that, because the statement is testimonial and Rangamar is not available for cross-examination, [Brooks] could prevent the [S]tate from introducing any portion of the statement under *Crawford.* The Court also concludes that the portions of Rangamar's statement proffered by [Brooks] are admissible as statements against Rangamar's penal interest and are corroborated by other evidence. When taken in isolation, however, the portions of the statement [Brooks] seeks to introduce are also likely to mislead the jury and to distort the content and context of Rangamar's entire statement. The Court finds that *Crawford* does not bar the introduction of evidence required under HRE Rule 106. This rule applies regardless of the reason for the declarant's unavailability. Even though [Brooks] is not responsible for the unavailability of Rangamar, he cannot be permitted to introduce misleading or distorted evidence to a jury.

Based on its analysis, the Circuit Court ruled:

Once [Brooks] makes the tactical decision to introduce the selected portions of Rangamar's statement to the police, he will waive or forfeit any claim that the introduction by the State of the portions of the statement necessary to prevent the jury from being misled pursuant to HRE Rule 106 violates the Confrontation Clause.

In addition, the Circuit Court noted that absent such a waiver or forfeiture of the confrontation right, the portions of Rangamar's statement that Brooks sought to admit would be excluded under HRE Rule 403 (1993) [6] (if the State was not allowed to introduce other portions authorized by HRE Rule 106) "because the probative value of the statements [proffered by Brooks] would be substantially outweighed by their prejudicial effect of misleading the jury."

### 3.

The Circuit Court's order also separately reviewed the portions of Rangamar's state-

6. HRE Rule 403 provides:
    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ment that Brooks sought to introduce and analyzed whether the portions of Rangamar's statement the State proffered in response were admissible under HRE Rule 106. For purposes of its analysis, the Circuit Court divided the portions of Rangamar's statement proffered by Brooks into eight groups, and for each group evaluated the portions of Rangamar's statement that the State proffered in response. With one exception,[7] the Circuit Court ruled that the responsive portions proffered by the State were admissible under HRE Rule 106 because the portions proffered by Brooks would mislead the jury if the responsive portions proffered by the State were not admitted.

### 4.

After completing its HRE Rule 106 analysis, the Circuit Court evaluated the admissibility of the responsive portions of Rangamar's statement proffered by the State under HRE Rule 403. The Circuit Court ruled that the responsive portions of Rangamar's statement proffered by the State that the court found admissible under HRE Rule 106 were not excludable under HRE Rule 403.

The Circuit Court determined that the responsive portions of Rangamar's statement proffered by the State were "extremely probative" because (1) they "place the exculpatory portions proffered by [Brooks] in context and prevent the jury from being misled about what Rangamar said about his involvement in the crime"; and (2) if admitted in isolation, the portions of the statement proffered by Brooks would create a "significant likelihood that the integrity of the factfinding process would be compromised because the jury would receive a misleading portrait of Rangamar's statement."

The Circuit Court further found that the responsive portions of Rangamar's statement proffered by the State would not subject Brooks to unfair prejudice. Rather, the Cir-

cuit Court stated that "contrary to [Brooks's] assertions, it would be unfairly prejudicial to allow [Brooks] to introduce the proffered portions of Rangamar's statements without allowing the State to introduce any portion necessary to correct the misleading impression created by the jury considering the statement out of context." The Circuit Court reasoned that "the portions of Rangamar's statement that [Brooks] seeks to introduce would so distort the accuracy and integrity of the factfinding process if offered in isolation that HRE Rule 403 would bar their admission if the State were not allowed to introduce clarifying and contextualizing portions of the statement."

### IV.

Brooks's theory of defense at trial was that Rangamar was solely responsible for the crimes committed against Arifuku, in other words, that Rangamar acted alone and not pursuant to a plan devised by Brooks. In support of this theory, Brooks elicited during his examination of Detective Anderson selected portions of Rangamar's statement to Detective Anderson that Brooks had proffered in his motion in limine. This included portions of Rangamar's statement in which Rangamar admitted his involvement in assaulting, restraining, and robbing Arifuku and acknowledged bringing the cap and homemade knife to Arifuku's apartment that were later recovered by the police. In response, the State elicited other portions of Rangamar's statement in which Rangamar asserted that his actions had been pursuant to a plan devised by Brooks and also implicated Brooks in Arifuku's murder.

The jury returned verdicts of guilty of the lesser included offense of manslaughter and guilty as charged of kidnapping and robbery. The jury also returned special interrogatories supporting the merger of the manslaughter and robbery charges and the merg-

---

**7.** The exception pertained to the portion of Rangamar's statement in which Rangamar acknowledged that he had brought a cap belonging to Brooks to Arifuku's apartment, which Rangamar had left behind. The Circuit Court noted that Brooks was offering this portion of the statement to refute the inference that Brooks's cap was at the crime scene because Brooks had left it there.

The Circuit Court ruled that the portion of Rangamar's statement proffered by the State in response was not admissible under HRE Rule 106 because it did "little to clarify, explain, or counter" the portion proffered by Brooks. At trial, the parties stipulated that Brooks was a contributor to the mixed DNA profile obtained from the cap.

er of the kidnapping and robbery charges. The State elected to dismiss the robbery charge, and the Circuit Court dismissed that charge. The Circuit Court imposed twenty-year terms of imprisonment on the manslaughter and kidnapping convictions to be served consecutively to each other and concurrently with the sentences imposed in another case. The Circuit Court entered its Judgment on December 30, 2008, and this appeal followed.

## DISCUSSION

### I.

On appeal, Brooks challenges the Circuit Court's ruling that once he made the tactical decision to introduce selected portions of Rangamar's statement, he waived or forfeited his claim that the State's introduction, pursuant to HRE Rule 106, of other portions of the statement necessary to prevent the jury from being misled violated the confrontation clause. Brooks does not challenge the Circuit Court's determination that the responsive portions of Rangamar's statement offered by the State were necessary to place the portions offered by Brooks in context and to prevent the jury from being misled. In effect, Brooks argues that he was entitled to introduce evidence favorable to his case in a manner that would mislead the jury, and then use *Crawford* to block the State from revealing that his evidence was misleading. We disagree.[8]

### A.

A defendant has the right under the confrontation clause of the United States and Hawai'i Constitutions to preclude the prosecution from admitting a testimonial hearsay statement unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant about the statement. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354; *State v. Fields,* 115 Hawai'i 503, 513, 516, 168 P.3d 955, 965, 968 (2007).[9] However, both the United States Supreme Court and the Hawai'i Supreme Court have concluded that a criminal defendant's "right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. El'ayache,* 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980). The same is true of a criminal defendant's right to present relevant testimony which also "is not without limitation" and may be subject to evidentiary rules designed to further legitimate interest in the criminal trial process. *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); *State v. Pond,* 118 Hawai'i 452, 463, 193 P.3d 368, 379 (2008) (internal quotation marks and citation omitted); *see Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ("[The United States Supreme Court has] never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness

8. Our analysis is directed at the portions of Rangamar's statement proffered by Brooks for which the Circuit Court ruled that the responsive portions proffered by the State were necessary to avoid misleading the jury and were admissible under HRE Rule 106. As noted, there was one exception in the Circuit Court's ruling that pertained to the portion of Rangamar's statement in which he acknowledged bringing a cap belonging to Brooks to Arifuku's apartment and leaving it behind. The Circuit Court ruled that the portion of Rangamar's statement proffered by the State in response was not admissible pursuant to HRE Rule 106. *See* footnote 7, *supra.* Thus, Brooks was permitted to introduce the portion of Rangamar's statement relating to the cap evidence without the State being able to introduce any portion of Rangamar's statement in response.

9. The confrontation clause of the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The confrontation clause of article I, section 14 of the Hawai'i Constitution is virtually identical and states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused [.]" In *State v. Grace,* 107 Hawai'i 133, 141, 111 P.3d 28, 36 (App.2005), this court noted that "federal constitutional guarantees are the absolute minimum constitutional protections we must afford criminal defendants[.]"

and reliability—even if the defendant would prefer to see that evidence admitted.").

For example, in *State v. Pond,* 118 Hawai'i at 462–68, 193 P.3d at 378–84, the Hawai'i Supreme Court rejected Pond's claim that the trial court had violated his constitutional right to present a defense and examine witnesses by precluding him from introducing HRE Rule 404(b) "bad act" evidence concerning the complaining witness due to Pond's failure to comply with the notice requirement of HRE Rule 404(b). The supreme court concluded that the notice requirement of HRE Rule 404(b) was not unconstitutional as applied to a criminal defendant because it served a legitimate interest in "protect[ing] parties and the jury trial system from falling prey to opposing counsel's trial tactics and strategies that do not promote a fair trial." *Id.* at 462–67, 193 P.3d at 378–83. The supreme court also concluded that the trial court did not abuse its discretion in relying on the HRE Rule 404(b) notice requirement in precluding Pond's HRE Rule 404(b) evidence. *Id.* at 467–68, 193 P.3d at 383–84.[10]

In *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the United States Supreme Court rejected Nobles's claim that his Sixth Amendment rights to compulsory process and cross-examination were violated by the trial court's refusal to allow a defense investigator to testify. The trial court ruled that a defense investigator could not testify about interview statements the investigator had obtained from two key government witnesses unless the defense disclosed portions of the investigator's report that contained the witnesses' statements for the prosecution's use in cross-examining the investigator. *Id.* at 227–29, 95 S.Ct. 2160. Nobles's counsel sought to call the investiga-

tor to impeach the government witnesses' trial testimony. *Id.* When Nobles's counsel stated that he did not intend to disclose the investigator's report, the trial court precluded the investigator from testifying. *Id.* at 229, 95 S.Ct. 2160. In holding that the trial court's ruling did not violate Nobles's Sixth Amendment rights, the Court reasoned as follows:

> The [trial court] did not bar the investigator's testimony. It merely prevented [Nobles] from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights. *The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth. Deciding, as we do, that it was within the court's discretion to assure that the jury would hear the full testimony of the investigator rather tha[n] a truncated portion favorable to [Nobles], we think it would be artificial indeed to deprive the court of the power to effectuate that judgment.*

*Id.* at 241, 95 S.Ct. 2160 (citation omitted; emphasis added).

Moreover, a defendant's right of confrontation can be waived. Defense counsel can waive certain aspects of a defendant's right of confrontation "where such waiver is considered ... a matter of trial tactics and procedure." *El'ayache,* 62 Haw. at 648, 618 P.2d at 1143; *Thompson v. Yuen,* 63 Haw. 186, 190, 623 P.2d 881, 884 (1981).

### B.

Brooks provides no authority for the proposition that he has a right to introduce evi-

---

10. In support of its analysis, the Hawai'i Supreme Court cited *Michigan v. Lucas,* 500 U.S. at 149, 111 S.Ct. 1743 (1991) (holding that precluding a defendant charged with rape from introducing evidence of his prior sexual relationship with the alleged victim based on the defendant's failure to comply with the notice requirements of Michigan's rape shield law did not per se violate the Sixth Amendment). *See also Taylor v. Illinois,* 484 U.S. 400, 410–18 & n. 15, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (rejecting the defen-

dant's claim that precluding a defense witness as a sanction for the defendant's violation of a discovery rule violated his right to compulsory process under the Sixth Amendment and stating that "[i]n the exercise of the right to present witnesses, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" (internal quotation marks, citation, and brackets omitted)).

dence that would mislead the jury. Indeed, HRE Rule 403 authorizes the trial court to exclude relevant evidence, "if its probative value is substantially outweighed by the danger of unfair prejudice ... or misleading the jury...." HRE Rule 403 (quoted in footnote 6). In this case, the Circuit Court determined that "the portions of Rangamar's statement that [Brooks] seeks to introduce would so distort the accuracy and integrity of the factfinding process if offered in isolation that HRE Rule 403 would bar their admission if the State were not allowed to introduce clarifying and contextualizing portions of the statement." *See State v. Faria*, 100 Hawai'i 383, 391, 60 P.3d 333, 341 (2002) (noting that despite a defendant's constitutional right to confront a witness, relevant evidence may be excluded pursuant to HRE Rule 403); *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (stating that "[t]he accused does not have an unfettered right to offer evidence that is ... inadmissible under standard rules of evidence" and citing Montana Rule of Evidence 403, which is identical to HRE Rule 403, as among the "number of familiar and unquestionably constitutional evidentiary rules" that "authorize the exclusion of relevant evidence" (internal quotation marks, citation, and brackets omitted)). In other words, the Circuit Court concluded that the selected portions of Rangamar's statement that Brooks sought to introduce would be inadmissible under HRE Rule 403 if the State was not permitted to introduce the portions of Rangamar's statement that the Circuit Court ruled were admissible pursuant to HRE Rule 106.

Here, the Circuit Court gave Brooks the choice of how to proceed. If Brooks chose to introduce selected portions of Rangamar's statement favorable to Brooks's case, Brooks would waive or forfeit the right to exclude other portions of Rangamar's statement necessary to avoid misleading the jury. Alternatively, by declining to introduce selected portions of Rangamar's statement, Brooks could have precluded the State from introducing any portion of Rangamar's statement.

Brooks argues that he was not required to make this choice because he was entitled to introduce the portions of Rangamar's statement favorable to his defense and, notwithstanding HRE Rule 106, use *Crawford* to block any responsive portions of the statement offered by the State. As noted by the Circuit Court, cases from other jurisdictions, under circumstances similar to those presented here, have rejected this argument. The Circuit Court summarized these cases as follows:

In *Arizona v. P[ra]sertphong*, for example, the defendant sought to introduce at trial portions of a co-defendant's statement to police in which the co-defendant admitted to shooting all of the victims murdered during a robbery in which they both participated. 114 P.3d 828, 829 (Ariz.2005) *cert. denied* 541 U.S. 1039 [124 S.Ct. 2165, 158 L.Ed.2d 727] (2006). The state agreed that the self-incriminating portions of the co-defendant's statement were admissible but argued that, to avoid misleading the jury, the entire statement should be admitted under Arizona's version of Rule 106. *Id.* at 829–30. The defendant maintained, however, that admission of the entire statement would violate his Sixth Amendment right to confront witnesses against him. *Id.*

The Arizona Supreme Court held that *Crawford* could not be used to prevent the state from introducing the remainder of the statement, because the defendant "forfeited his Confrontation Clause right not to have [the co-defendant's] statement admitted against him when [the defendant] himself introduced portions of that statement." *Id.* at 831–32. The court further held that the rule of completeness "require[d] the admission of those portions of the statement that [were] necessary to qualify, explain, or place into context the portion already introduced." *Id.* at 831. Therefore, the trial court had properly admitted the entire statement because it "permitted admission of the remaining portions [of the statement] only to ensure that those selected portions of that statement [introduced by the defendant] did not mislead the jury." *Id.*

In order to demonstrate how "unfair and unreliable" trials would be if it were to adopt the defendant's position, the Arizona

Supreme Court offered the following example:

> Under [the defendant's] analysis, if a co-defendant had confessed to the police that he murdered two people, but then subsequently said in the same interview that the defendant forced him to do so at gunpoint, the defendant could introduce the first portion ... because it was a statement against interest. The state, however, could not introduce the remainder of the confession under Rule 106 because it would violate *Crawford*.

*Id.* at 834. "Such a position[,]" the court said, "transforms the Confrontation Clause from a shield to a sword." *Id.*

The Court of Appeal of California dealt with a similar argument in *People v. Parrish*, 152 Cal.App.4th 263, 60 Cal.Rptr.3d 868 (Cal.App.2007) *review denied People v. Parrish*, S154304, 2007 Cal. LEXIS 10549 (Cal. Sept. 25, 2007). In *Parrish*, the defendant sought to introduce portions of a co-defendant's statement that suggested that the defendant was coerced into participating in a robbery. *Id.* at 275 [60 Cal. Rptr.3d 868]. The state sought to introduce other portions of the statement that suggested that the defendant was a willing participant in the crime. *Id.* The court held that, because "*Crawford* forbids only the admissibility of evidence under statutes purporting to substitute another method for Confrontation Clause test of reliability, evidence admissible under [the rule of completeness] does not offend *Crawford*." [*Id.* at 273, 60 Cal.Rptr.3d 868]. The court further held that, "Because the statements proffered by defendant, when viewed in isolation presented a misleading picture of the entirety of [the co-defendant[']s] interview, and the evidence proffered by the prosecution served to put those statements in context, ... the evidence proffered by the prosecution was admissible under [the rule of completeness].["] *Id.* at 276 [60 Cal.Rptr.3d 868].

Similarly, in *U.S. v. Moussaoui*, 382 F.3d 453 (4th Cir.2004), the defendant argued that *Crawford* precluded the government from introducing inculpatory portions of a witness' statement to counter exculpatory portions of the same witness' statement that the defendant sought to admit. *Id.* at 481–82. The court disagreed, holding that the proffered evidence was admissible under Rule 106 so long as the statements either explained or clarified the portions that were introduced by the defendant. *Id.*

> . . .
>
> ... In *South Dakota v. Sel[a]l[l]a*, the South Dakota Supreme Court held the defendant's introduction of favorable hearsay from an unavailable declarant's testimonial statement to police properly enabled the prosecution to "complete the picture" by eliciting evidence from the rest of the declarant's statement. [744 N.W.2d 802, 818 (S.D.2008) ]. The court found that refusing to allow the prosecution to do so would "eviscerate the rule of completeness" and result in "unfair outcomes." *Id.*

(Some brackets and ellipsis points in original, some added.)

The Circuit Court rejected Brooks's argument that his case was distinguishable · because Brooks had "nothing to do with the unavailability of Rangamar." Brooks contended that in *Prasertphong* and *Parrish*, the defendant made the declarant unavailable by moving to sever the trial from the co-defendant and that the rationale of those cases apply only where the defendant is responsible for the unavailability of the absent declarant. The Circuit Court, however, observed that in *Selalla*, the defendant bore no responsibility for the unavailability of the absent declarant. The Circuit Court further noted that in neither *Prasertphong* nor *Parrish* did the court state that separate trials were held at the defendant's request, and the Circuit Court found that it would be "illogical" for admissibility under HRE Rule 106 to turn on whether the defendant or the prosecution moved for a severance.[11] The Circuit Court concluded that Brooks's attempt to distinguish these cases was unpersuasive.

---

11. We also note that it would be a co-defendant's Fifth Amendment privilege, and not a trial severance, that would make a co-defendant unavailable.

## II.

We agree with the Circuit Court's analysis and with the decisions from other jurisdictions the Circuit Court cited which have held that *Crawford* does not bar the admission of evidence pursuant to the rule of completeness. We conclude that the Circuit Court properly ruled that Brooks was not entitled to introduce selected portions of Rangamar's statement that were favorable to his defense and, at the same time, use *Crawford* to preclude the State from introducing other portions of Rangamar's statement that were necessary to prevent the jury from being misled.

*Crawford* did not address the rule-of-completeness situation presented by this case. In *Crawford,* it was the prosecution that, in the first instance, introduced the testimonial hearsay statement. *Crawford,* 541 U.S. at 38–41, 124 S.Ct. 1354. Here, it is Brooks that introduced selected portions of Rangamar's testimonial hearsay statement and then invoked *Crawford* in an attempt to prevent the State from placing Rangamar's statement in context and presenting an accurate picture of Rangamar's statement to avoid misleading the jury.

The right of confrontation is not absolute, and we conclude that it cannot be used to distort and subvert the truth-seeking function of the criminal trial process by authorizing the admission of evidence in a manner that would mislead the jury. *See Pond,* 118 Hawai'i at 462–68, 193 P.3d at 378–84; *El'ayache,* 62 Haw. at 649, 618 P.2d at 1144; *Nobles,* 422 U.S. at 241, 95 S.Ct. 2160; *Taylor,* 484 U.S. at 410–18 & n. 15, 108 S.Ct. 646. Brooks sought to introduce selected portions of Rangamar's statement to support his claim that Rangamar acted alone and was solely responsible for the crimes committed against Arifuku. However, permitting Brooks to use Rangamar's statement in this fashion would have misled the jury since Rangamar's statement also asserted that Rangamar acted pursuant to a plan devised by Brooks and implicated Brooks in Arifuku's murder. The Circuit Court properly ruled that if Brooks decided to introduce selected portions of Rangamar's statement, the State would be entitled to introduce other portions of the statement necessary to prevent the jury from being misled.

It appears that the overwhelming majority of jurisdictions that have addressed the issue presented in this appeal have held that *Crawford* does not preclude the application of the rule of completeness when a defendant selectively introduces portions of a testimonial hearsay statement. *E.g., Prasertphong,* 114 P.3d 828; *Parrish,* 60 Cal. Rptr.3d 868; *Moussaoui,* 382 F.3d 453; *Selalla,* 744 N.W.2d 802. The only contrary authority cited by Brooks is *United States v. Cromer,* 389 F.3d 662 (6th Cir.2004). In *Cromer,* the court held that in light of *Crawford,* the government's introduction of testimonial hearsay evidence in response to the defendant's having opened the door to such evidence violated the defendant's right of confrontation. *Id.* at 678–79. The court reasoned that under *Crawford,* the confrontation clause was not dependent upon the law of evidence. *Id.*

We are not persuaded by the reasoning in *Cromer* and decline to follow it. *See State v. Birth,* 37 Kan.App.2d 753, 158 P.3d 345, 354–55 (2007) (declining to follow *Cromer* and permitting the government to introduce testimonial hearsay evidence where the defendant opened the door to such evidence); *People v. Ko,* 15 A.D.3d 173, 789 N.Y.S.2d 43, 45 (2005) (same); *Ko v. Burge,* No. 06 Civ. 6826(JGK), 2008 WL 552629, at *13 (S.D.N.Y. Feb.26, 2008) ("The *Cromer* decision cited no authority for the proposition that a defendant cannot open the door to the admission of evidence otherwise barred by the Confrontation Clause. The decision has not been followed by any other Court of Appeals."). We instead follow the strong majority view in rejecting Brooks's contention that under *Crawford,* he had an absolute right to introduce selected portions of Rangamar's statement and to preclude the State from introducing other portions of the statement necessary to avoid misleading the jury.[12]

---

12. Brooks cites pre-*Crawford* decisions which precluded the government from introducing an unavailable accomplice's out-of-court statement to law enforcement authorities that inculpated the defendant as a statement against penal interest. Brooks's reliance on these cases is mis-

474

As noted, Brooks does not challenge the Circuit Court's determination that the responsive portions of Rangamar's statement offered by the State were necessary to place the portions offered by Brooks in context and to prevent the jury from being misled. We conclude that the Circuit Court did not abuse its discretion in ruling that the responsive portions of Rangamar's statement offered by the State were admissible under HRE Rule 106 and HRE Rule 403. *See State v. Steger,* 114 Hawai'i 162, 172, 158 P.3d 280, 290 (App. 2006) (concluding that trial court's application of HRE Rule 403 is reviewed for abuse of discretion); *Parrish,* 60 Cal.Rptr.3d at 876 (reviewing trial court's application of California's rule of completeness for abuse of discretion).

## CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Judgment.

placed. The decisions cited by Brooks are inapposite because in those cases, it was the government that, in the first instance, introduced and sought to make offensive use of the inculpatory hearsay statement against the defendant. *See Selalla,* 744 N.W.2d at 818. Here, the State was only permitted to introduce portions of Rangamar's statement defensively, in response to portions introduced by Brooks, to prevent the jury from being misled.